CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 1 1 2019

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JAMES HOBACK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 6:19-cv-18 |
| v. ) | |
| ) | |
| ) | |
| SYNCHRONY BANK, ) | |
| ) | By:   Michael F. Urbanski |
| Defendant. ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on defendant Synchrony Bank's ("Synchrony") motion to dismiss plaintiff James Hoback's ("Hoback") complaint in part, filed on April 15, 2019. ECF No. 3. Hoback responded in opposition on April 29, 2019. ECF No. 11. Synchrony replied on May 6, 2019, ECF No. 13, and the court heard argument on May 13, 2019, ECF No. 17. For the reasons explained below, the court will **DENY** Synchrony's motion.

### I.[1]

Hoback discovered a discrepancy in his credit history when he applied for a Carnival Credit Card and his application was denied on the basis of poor credit. ECF No. 1-1, at 2. The cause of his poor credit was a tradeline on his credit report—a Synchrony Bank/AAMCO co-branded credit card account on which Hoback was listed as a co-signer. Id. Hoback has never contracted with Synchrony for credit for himself or anyone else. Id.

---

[1] All facts are taken from Hoback's Complaint and are presumed to be true for the purpose of this motion. Republican Party of North Carolina v. Martin, 980 F.2d v. 943, 952 (4th Cir. 1992).

Synchrony has "continued to publish and re-publish false information that [Hoback] is delinquent on this credit line and has failed to make timely payments." Id. at 3. Synchrony has published this information to Equifax, TransUnion, and Experian, among other credit reporting agencies. Id.

Upon discovering the AAMCO credit card on his report, Hoback complained to Equifax, TransUnion, and Experian and "alerted each that the derogatory information being published about him was incorrect." ECF No. 1-1, at 3. All three requested that Synchrony investigate the information to determine its accuracy. Synchrony did not do so and continued to publish Hoback's credit history with the Synchrony Bank/AAMCO co-branded credit card to third parties.[2]

Hoback filed suit in the Bedford County Circuit Court on April 8, 2019. ECF No. 1-1. Hoback's complaint brings seven counts, which fall into three categories: (1) Count I brings a claim of defamation; (2) Counts II-V bring three violations of § 1681s-2(b) of the Fair Credit Reporting Act, Failure to Reasonably Investigate; (3) Counts VI-VII bring violations of §1681b of the Fair Credit Reporting Act, Impermissible Pull. Id. at 3–6. Synchrony removed the case to federal court on April 8, 2019. ECF No. 1-2.

## II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. Absent subject matter jurisdiction, a court must dismiss the action. Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 653 (4th

---

[2] At the hearing on this motion, Hoback's counsel reported that Synchrony had recently stopped reporting the Synchrony Bank/AAMCO co-branded credit card in connection with Hoback's credit report.

2

Cir. 1999). Whether a plaintiff has standing to bring a cause of action "is generally associated with Civil Procedure Rule 12(b)(1) pertaining to subject matter jurisdiction." CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011). "That is because 'Article III gives federal courts jurisdiction only over cases and controversies,' and standing is 'an integral component of the case or controversy requirement.'" Id. (quoting Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006)). When a defendant raises substantive challenges to a court's jurisdiction under Rule 12(b)(1), the court need not accept the complaint's allegations as true and may consider facts outside the complaint to determine if it can properly exercise subject matter jurisdiction. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). At all times, "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." Evans, 166 F.3d at 647.

Meanwhile, Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). A plaintiff establishes "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable factual inferences in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, "[t]hreadbare recitals of the elements of a cause of action,

3

supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) (holding the court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments") (internal quotation marks omitted).

### III.

Synchrony has moved that Count I of Hoback's complaint (defamation) be dismissed, as it is preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"). ECF No. 3 & 4. Determining the validity of Synchrony's argument requires two different analyses: (1) is Hoback's claim preempted by the broad language of § 1681t(b)(F); and if not, (2) has Hoback alleged facts showing that Synchrony acted with malice, thereby exempting this claim from preemption under § 1681h(e). The court will address each analysis in turn.

### A.

Synchrony argues first that the state law claim of defamation is preempted by the FCRA under § 1681t(b)(F). ECF No. 3 & 4. Synchrony argues that the FCRA sets forth two general requirements for entities like itself that provide information to Credit Reporting Agencies (entities known as furnishers): (1) the duty to provide accurate information under § 1681s-2(a); and (2) the duty to investigate the accuracy of reported information upon receiving notice of a dispute from a credit reporting agency under § 1681 s-2(b). 15 U.S.C. § 1681s-2. The private right of action available to a consumer under the FCRA arises under § 1681s-2(b) once that consumer disputes incorrect information with a CRA and that CRA informs the furnisher. Synchrony reasons that, given that the FCRA sets up a framework for

4

how such claims should progress, it stands to reason that other claims arising under state law would be preempted. ECF No. 4, at 4.

The FCRA includes two specific preemption provisions. In arguing that Hoback's first count is preempted, Synchrony points to § 1681t(b)(F), which states

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under...section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies.

15 U.S.C. § 1681t(b)(1)(F). Synchrony argues this language means that the FCRA completely preempts all state actions related to the reporting of credit information and the investigation of any disputes of that information "to avoid a patchwork system of conflicting regulation," protecting provision of credit reporting or investigations from state regulatory schemes. Ross v. FDIC, 625 F.3d 808, 813 (4th Cir. 2010). On its face, § 1681t(b)(1)(F) appears to preempt any and all state law claims, whether statutory or at common law, including those based on allegations of willful false reporting. Purcell v. Bank of America, 659 F.3d 622, 625 (7th Cir. 2011).

Hoback responds by pointing out the second of the FCRA's two preemption provisions, § 1681h(e):

> Except as provided in sections 1681n and 1681o, no consumer may bring any action or proceeding in the nature of defamation ... with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole

5

or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

This section seems to bar certain common law actions in several specific circumstances. 15 U.S.C. § 1681h(e). Hoback argues that Synchrony Bank's reading of § 1681t(b)(1)(F) as a complete preemption of state law claims would render § 1681h(e) useless. ECF No. 12, at 5–6.

As Hoback explains in his response to the motion, nearly every district court in the Fourth Circuit has adopted what is known as the "statutory approach" to the preemption language of the FCRA, designed to reconcile the two preemption provisions so that neither is redundant. See, e.g., Davis v. Trans Union, LLC, 526 F. Supp. 2d 577, 588 (W.D.N.C. 2007) ("[T]he growing consensus in district courts in the Fourth Circuit is to adopt the statutory approach."); Bouchard v. Synchrony Bank, C.A., No.: 2:16-cv-1713-PMD, 2016 EL 3753220, at *5-6 (S.C. Dist. Ct. Jul. 14, 2016); Barnhill v. Bank of Am., N.A., 378 F. Supp. 2d 696, 703-704 (S.C. Dist. Ct. 2005) ("[T]his court notes that there is support for the statutory approach among district courts within the United States Court of Appeals for the Fourth Circuit and in two unpublished opinions by the Fourth Circuit."). The statutory approach holds that § 1681t(b)(1)(F) only applies to state statutory claims and that § 1681h(e) only addresses state common law claims. See Bourdelais v. JPMorgan Chase Bank, N.A., No. 3:10cv670, 2012 WL 5404084, at *18 (E.D. Va. May 21, 2013) (explaining the statutory approach and noting that seven of the nine districts in the Fourth Circuit have adopted this statutory approach). See also Beuster v. Equifax Info. Servs., 435 F. Supp. 2d 471, 478 (Dist. Ct. Md. 2006) ("Several district courts, including those within the Fourth Circuit, have used a 'statutory approach' to reconcile the pre-emption provisions of § 1681h(e) and §

1681t(b)(1)(F)). The Western District of Virginia has not yet applied this analysis simply because this is, so far as the court is aware, the first time it has been presented with the opportunity.

The court agrees with Hoback that the statutory approach is the best way to read the FCRA's preemption provisions. The court will thus construe § 1681t(b)(1)(F) as applying only to state statutory claims. Therefore, it does not preempt Hoback's defamation claim.

**B.**

Synchrony next argues that, even were the court to find that § 1681t(b)(1)(F) did not apply to Hoback's defamation claim, § 1681h(e) of the FCRA would still preempt Count I because Hoback does not plausibly allege Synchrony acted "with malice or willful intent to injure." ECF No. 13, at 5. Both parties acknowledged during argument that, were the court to find that Hoback does not allege sufficient facts to show malice or willful intent to injure, Count I would be preempted by § 1681h(e). Hoback, however, argues that sufficient facts have been alleged to support an assertion of malice and points to several factual allegations in the complaint in support.

Assessing Hoback's argument first requires a determination of how courts interpreting the FCRA define "malice." The FCRA itself provides no definition of malice, and courts have split between applying a federal or state standard. Ross v. FDIC, 625 F.3d 808, 8015 (4th Cir. 2010). Jurisdictions that have adopted a federal standard typically implement the "actual malice" definition announced in New York Times Co. v. Sullivan, 346 U.S. 254, 280 (1964), which requires that a statement be made with "knowledge that it was false or with reckless disregard of whether it was false or not." Hoback argues in favor of the

state law concept of "malice," rather than the definition supplied by federal law, citing to Richmond Newspapers, Inc. v. Lipscomb, 234 Va. 277, 362 S.E.2d 32 (1987).

The court finds Hoback's reliance on Richmond Newspapers, Inc. odd, as the case noted that malice as defined by New York Times Co. differed from "common law malice," but did not identify when common law malice ought to be applied and indeed applied the standard supplied by New York Times Co. Richmond Newspapers, Inc., 234 Va. at 284, 362 S.E.2d at 35 ("'Actual malice' as described in New York Times might be confused with common law malice, which involves 'motives of personal spite, or ill-will.'"). In any event, more recent precedent applying state-law malice adopts a slightly broader definition, describing "actual malice" as "some sinister or corrupt motive such as hatred, revenge, personal spite, ill-will, or desire to injure the plaintiff; or what, as a matter of law, is equivalent to malice, that the communication was made with such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff." Southeastern Tidewater Opportunity Project, Inc. v. Bade, 246 Va. 273, 276, 435 S.E.2d 131, 132–33 (1993).

The Fourth Circuit applied a state malice standard in Beattie v. Nations Credit Financial Services Corp., 69 Fed. App'x. 585, 591 (4th Cir. 2003). Since Ross was decided, six districts in the Fourth Circuit have defined malice under the FCRA § 1681h(e); the clear majority applied a state law definition. See, e.g., Englert v. Nationstar Mortgage, Inc., No. 1:15-cv-303-GBL-MSN, 2015 WL 9275662, at *5 (E.D. Va. Dec. 18, 2015) (assessing malice as defined by Southeastern Tidewater Opportunity Project, Inc. in determining whether a defamation claim is preempted by § 1681h(e)); Joiner v. Revco Discount Drug Centers, Inc.,

8

467 F. Supp. 2d 508, 514 (W.D.N.C. 2006) ("When considering the presence of malice under the FCRA, the Court must adhere to the local common law definition of malice."); Sanders v. Bank of America, No. 1:16-cv-78, 2016 WL 4998290, at *4 (N.D. W. Va. Sept. 19, 2016) (defining malice under West Virginia law for purposes of a § 1681h(e) preemption analysis); Potter v. FIA Card Services, No. 2:12-cv-1722-RMG, 2012 WL 13005806, at *2 (D.S.C. Sept. 28, 2012). But see Stoer v. VW Credit, Inc., No. GJH-17-3203, 2018 WL 3608776, at *2 (D. Md. July 26, 2018) (applying a distinct definition of malice) ("[M]alice requires reckless disregard for the truth or falsity of the reported debt."); Hayes v. Johnson, No. 1:16-cv-66, 2016 WL 3632715, at *3 (N.D. W. Va. June 29, 2016) (applying the New York Times malice definition). The court will apply the state law definition of malice, taken from Southeastern Tidewater Opportunity Project, Inc., 246 Va. at 276, 435 S.E.2d at 132–33.

At the hearing on the motion, Hoback argued he has alleged Synchrony's reckless indifference to the truth in paragraphs eight, nine, and ten of the complaint:

> 8. Mr. Hoback complained to Equifax, TransUnion, and Experian and alerted each that the derogatory and defamatory information being published about him was incorrect.
> 9. As a result of these complaints, Equifax, TransUnion, and Experian each requested Synchrony to investigate the derogatory information in was reporting about Mr. Hoback and affirm whether it was true or not.
> 10. Even after being asked to investigate the basis for its reporting, Synchrony has continued to willfully publish derogatory and defamatory statements about Mr. Hoback to third parties.

ECF No. 1-1, at 3. The court must assess if continuing to publish incorrect information regarding Mr. Hoback's Synchrony Bank/AAMCO co-branded credit card constitutes malice under Virginia law.

Courts assessing defamation claims brought in the context of credit reporting errors and FCRA violations tend to permit such claims to proceed to discovery if plaintiffs assert any allegations beyond "merely reciting the legal standard." Billups v. Retain Merchants Ass'n, Inc., 620 Fed. App'x 211, 213 (5th Cir. 2015). See, e.g., Taylor v. Chase Auto Financial Corp., 850 F. Supp. 3d 637, 643 (N.D. Miss. 2012) (finding that plaintiff had alleged defamation was malicious and/or willful due to continued publication of a fraudulently obtained account and incurred charges, but expressing doubt as to the viability of the claim after the 12(b)(6) stage of litigation). Of particular assistance is Davis v. Equifax Information Services LLC, 2019 WL 1431215 (W.D. La. March 1, 2019). In Davis, plaintiff brought two claims, one for defamation and one for violation of § 623 of the FCRA. Id. at *1. Defendant argued that plaintiff's defamation claim was preempted by the FCRA. Id. After deciding to follow the statutory approach and applying § 1681h(e) to plaintiff's claim, the court determined that, to prove malice, plaintiff "must show that the defendants acted knowing the statements were false or with a reckless disregard of whether they were false. (internal citations omitted). Id. at *2–3. Defendant argued that "[n]either the failure to correct alleged errors after receiving notification of an alleged inaccuracy in a consumer's file, nor the mere existence of inaccuracies in a consumer's report alone, can amount to willfulness." Id. at *3. The court agreed with the latter proposition but found the first "misplaced." Id. at *4. Plaintiff had alleged that the defendant was aware of the dispute, that he himself (plaintiff) had provided proof of the fraudulent account, and that the defendant had failed to adequately investigate. Id. The court deemed this sufficient to constitute malice. Id.

Davis applied the malice standard of another state, but both the Louisiana and the Virginia standard incorporate reckless disregard or indifference to the truth. Like the plaintiff in Davis, Hoback has alleged more than a recitation of the standard of willful or malicious conduct. Hoback's allegations that he alerted Equifax, TransUnion, and Experian about the incorrect information being reported, that these complaints resulted in three requests to investigate, and that Synchrony continued to publish the complained-of report are sufficient to advance beyond the 12(b)(6) stage of proceedings, though dismissal of this claim may prove appropriate following discovery. See Taylor, 850 F. Supp. 3d at 643 ("Refraining to address whether dismissal of the state law defamation claim would be appropriate in a further procedural context, the Court finds Plaintiff has plausibly stated a claim for defamation under Mississippi law that will survive the Rule 12(b)(6) stage."). See also Englert v. Nationstar Mortgage, Inc., No. 1:15-cv-303-GBL-MSN, 2015 WL 9275662, at *5 (E.D. Va. Dec. 18, 2015) (granting summary judgment as to plaintiff's defamation claim after finding that, while plaintiff could show his own "dozens" of complaints to defendant as to incorrect credit reports, discovery had revealed no correspondence or internal documents "demonstrating [defendant] had acted with malice").

## VI.

For the reasons explained above, Synchrony's motion is **DENIED**.

An appropriate Order will be entered.

Entered: 06-10-2019

/s/ Michael F. Urbanski
Michael F. Urbanski
Chief United States District Judge